UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CHRISTOPHER BOWDEN,

                Plaintiff,

v.                         Case No. 3:12-cv-652-J-99MMH-JRK

ROBERT STOKELY, et al.,

                Defendants.

_____

### REPORT AND RECOMMENDATION[1]

#### I.  Status

     Plaintiff Christopher Bowden, an inmate of the Florida Department of Corrections ("FDOC"), is proceeding pro se on an Amended Complaint (Doc. #10).  One motion is before the Court: Defendants' February 25, 2013, Motion for Summary Judgment ("Motion for Summary Judgment") (Doc. #26).  Plaintiff's response to Defendants' Motion for Summary Judgment ("Response") (Doc. #30) was filed on March 18, 2013.[2]  See Order (Doc. #28).

---

     [1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within **FOURTEEN (14) DAYS** after service of this document.  Failure to file timely objections may bar a party from a de novo determination by a district judge and from attacking factual allegations on appeal.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

     [2] Plaintiff misspells Defendant Robert Stokely's last name. See Response at 2 n.1.  For the purposes of this Report and Recommendation, the Court will use the spelling provided by

## II.  Amended Complaint

In the Amended Complaint, Plaintiff raises the following claims for relief: (1) an Eighth Amendment claim of excessive force against Defendants Stokley, Hall and Norris for using physical force and/or chemical agents against him without need or provocation; (2) the torts of assault and battery under Florida law against Defendants Stokley and Hall for using physical force without need or provocation; and (3) a First Amendment claim[3] of retaliation against Defendant Norris for ordering an officer to chemically spray Plaintiff.  Amended Complaint at 1-4.  As relief, Plaintiff seeks compensatory damages against Defendants, jointly and severely; punitive damages against each Defendant; and, "[a]ny additional relief this court deems just, proper, & equitable."  Id. at 5.  Each Defendant is sued in his individual capacity.  Id. at 2.

The following factual allegations in the Amended Complaint are relevant to the claims against Defendants.  During the two incidents that took place in November 2011 that are the centerpiece

───────────────

Defendant, Robert Stokley.

[3] Although there is no specific reference to the First Amendment to the United States Constitution in the Amended Complaint, Plaintiff alleges that Defendant Norris, on November 10, 2011, ordered that Plaintiff be gassed in retaliation for the November 6, 2011 incident.  Amended Complaint at 3.  Liberally construing Plaintiff's pro se Amended Complaint, the Court assumes for the purposes of reviewing Defendants' Motion for Summary Judgment that Plaintiff intended to raise a First Amendment retaliation claim.

of this case, Plaintiff was confined at the Reception and Medical Center ("RMC"), a correctional institution of the FDOC.[4]  Amended Complaint at 1.   On November 6, 2011, Defendant Stokley stopped Plaintiff at the entry to the prison dining hall to inquire whether Plaintiff had a shaving pass.[5]  Id. at 2.   In response, Plaintiff said that there were no razors, but razors would be issued the next day.   Id.  Defendant Stokley ordered Plaintiff back to his dorm.  Id.  Defendant Stokley made a remark about blacks, and Plaintiff laughed and said: "'Yeah & we make enough to feed the pigs, nobody want [sic] this garbage anyway[.]'"   Id.   Prior to Plaintiff exiting, Defendant Stokley screamed "stop," cursed, and asked for Plaintiff's identification.   Id.   Plaintiff provided his identification to Defendant Stokley, and Defendant Stokley "snatched" it from him, using racially derogatory terms and threatening to "wipe that smile" from Plaintiff's face.   Id.  Plaintiff "chuckled" as he left the dining area.   Id.

Shortly thereafter, while Plaintiff was standing in front of E-dormitory waiting for Defendant Hall to allow him entry, Plaintiff observed Defendant Stokley "march out" of the dining hall and walk briskly toward Plaintiff.  Id.  Defendant Stokley "stomped

---

[4] Plaintiff is currently confined in Florida State Prison. See http://www.dc.state.fl.us/AppCommon.

[5] Correctional officers were checking inmates' faces to see if they were clean shaven, and if an inmate was not clean shaven, denying the inmate access to the dining hall and the meal.  Amended Complaint at 2.

through the security gate" and went straight to the officer's booth, gesturing for Plaintiff to enter the building. <u>Id.</u> Defendant Stokley pushed Plaintiff into the officer's station. <u>Id.</u> Once inside, Defendant Stokley yelled and cursed at Plaintiff. <u>Id.</u> at 2-3. Plaintiff ignored Defendant Stokley and smiled. <u>Id.</u> at 3. Defendant Hall laughed. <u>Id.</u>

After approximately two minutes, Defendant Stokley directed Plaintiff to "'show [him] them teeth.'" <u>Id.</u> Defendant Stokley then punched Plaintiff in the face. <u>Id.</u> "Plaintiff fell" into Defendant Stokley "from the force behind the punch" and "to prevent further attack." <u>Id.</u> Defendant Hall watched Defendant Stokley punch Plaintiff until Defendant Stokley asked for Defendant Hall's assistance. <u>Id.</u> At that point, Defendant Hall punched Plaintiff in the face. <u>Id.</u>

While Plaintiff was begging the officers to stop beating him, a third officer entered the room and placed Plaintiff in a "choke hold." <u>Id.</u> Plaintiff resisted the "choke hold" while Defendant Stokley and Defendant Hall continued to punch him. <u>Id.</u> Either Defendant Stokley or Defendant Hall hit the officer choking Plaintiff, causing the officer to release Plaintiff. <u>Id.</u> Plaintiff fell to his hands and knees, and he was punched and kicked in the head and upper torso. <u>Id.</u> Defendant Stokley encouraged Defendant Hall to do more physical harm to Plaintiff. <u>Id.</u> Plaintiff "balled up," and eventually was handcuffed in a

- 4 -

prone position.  Id.  Defendant Hall hit Plaintiff "in the skull with his radio" and sprayed him with pepper spray.  Id.  Plaintiff mumbled "'[c]owards,'" and Defendant Stokley kicked him in the face.  Id.

As a result of the beating, Plaintiff "rec[ei]ved lacerations to the head & inside his mouth & numerous bruises to his arms, torso, & head."  Id.  A use of force camera operator arrived, and Plaintiff was escorted to confinement-medical where he received treatment for his head wound and chemical agent exposure.  Id.

On November 10, 2011, while Plaintiff was in his cell, Defendant Norris ordered Plaintiff to be chemically sprayed in retaliation for the November 6, 2011 incident with the other officers.  Id.  Plaintiff and his cell were covered with chemical agents, causing him discomfort and pain while breathing.  Id. Plaintiff remained in his cell without ventilation for almost an hour before being taken to the shower.  Id.  Plaintiff did nothing to provoke the use of the chemical agents.  Id.

Plaintiff received a disciplinary report for the November 6, 2011 incident.  Id. at 4.  As a result of that disciplinary report, he was found guilty of attempted battery on a correctional officer and disciplined.[6]  Id.  He appealed the matter to the warden, and

---

[6] Although Plaintiff states that he received sixty days of disciplinary confinement, sixty days loss of gain time, and referral to close management 1 status for this disciplinary infraction, his own exhibit and those of Defendants show that Plaintiff was not sanctioned with a loss of gain time.  See

his claim of abuse by the officers was forwarded to the Institutional Inspector for investigation, but the appeal was otherwise denied.  Id.  Plaintiff's appeal to the Secretary of the FDOC of the warden's decision was denied.  Id.

### III.  Summary of Arguments

In the Motion for Summary Judgment, Defendants make the following arguments: Plaintiff fails to establish an Eighth Amendment violation; Plaintiff fails to establish a claim for a false disciplinary report or retaliation concerning the November 10, 2011 incident; Defendants are entitled to qualified immunity; Plaintiff is not entitled to compensatory or punitive damages; Defendant Norris is improperly joined in this action; and Plaintiff's state law claims should be dismissed.  Motion for Summary Judgment at 1, 11-24.  Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendants request that summary judgment be granted in their favor.  Id. at 1, 25.  Plaintiff responds that Defendants are not entitled to qualified immunity and there are genuine issues of material fact that preclude summary judgment. Response at 1.

---

Plaintiff's Declaration ("Decl.") (Doc. #2), attached Report of Close Management; Defendants' Exhibit ("Def. Ex.") 3 at 14, Exhibit A, Disciplinary Report Hearing Information Log # 209-110698.  The Court hereinafter refers to Defendants' Exhibits (Docs. #26 & #27) as "Def. Ex."  The pages of some of the Exhibits are unnumbered, so for the ease of the reader, the Court refers to the pagination assigned by the Court's Electronic Case Filing System for all of Defendants' Exhibits.

## IV.   Standard of Review - Motion for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Crawford v. Carroll, 529 F.3d 961, 964 (11th Cir. 2008) (citations omitted). "The burden of demonstrating the satisfaction of this standard lies with the movant," Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003), cert. denied, Airtran Airways, Inc. v. Branche, 540 U.S. 1182 (2004), who must present "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" to show that the facts cannot be genuinely disputed, Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In addition, judgment should enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.

"'When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007) (quoting Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)). In ruling on a motion for summary judgment, a court must "constru[e] the facts and draw[] all reasonable inferences therefrom in the light most favorable to the non-moving party." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005) (citing Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002)).

## V.   Findings of Fact and Conclusions of Law

### A.   Defendant Norris and the November 10, 2011 Incident

Defendants, in the Motion for Summary Judgment, assert that Plaintiff fails to establish a claim for retaliation against Defendant Norris (the FDOC officer who Plaintiff alleges gave the order to have Plaintiff chemically sprayed on November 10, 2011), and Defendants contend there is improper joinder of Defendant Norris to this action.   Motion for Summary Judgment at 20-21, 23-24.   In the Response, Plaintiff states: "[f]or the purpose of summary judgement [sic], Plaintiff defers to exclude Defendant Norris from further prosecution."   Response at 1.   At the

conclusion of the Response, Plaintiff asks the Court to deny summary judgment only as to Defendants Stokley and Hall.  Id. at 11.  No other mention is made of Defendant Norris in the Response. See Response.  In his Declaration in Opposition to Defendants' Motion for Summary Judgment, Plaintiff states: "I have dismissed defendant L. Norris from this federal action."  Response at Exhibit 1 ("Pltf. Ex. 1") at 1.  Based on these statements in the Response, the Court finds that Plaintiff does not intend to proceed against Defendant Norris and that Plaintiff seeks Defendant Norris's dismissal.  Accordingly, Defendant Norris is due to be dismissed from this action with prejudice.

## B.  False Disciplinary Report

Defendants contend Plaintiff fails to establish that Defendants Stokley and Hall made a false disciplinary report. Motion for Summary Judgment at 17-19.  Plaintiff, in the Response, states that he is not attacking the disciplinary decision or claiming that it was decided in error.  Response at 9.  He further states he is not claiming a denial of due process during the disciplinary process under the Fourteenth Amendment.  Id.  Instead, he states that he is simply raising an Eighth Amendment claim against Defendants Stokley and Hall, asserting they "beat him and applied chemical agents against him without provocation."[7]  Id.

---

[7]    Also in the Response, Plaintiff mentions Heck v. Humphrey, 512 U.S. 477, 487 (1994), a case in which the Supreme Court held that if a judgment in a § 1983 claim for monetary

Therefore, Defendants' argument that Plaintiff fails to establish a claim for a false disciplinary report is not further addressed.

## C.  Eighth Amendment Violation

Plaintiff claims he was subjected to physical force and the use of chemical agents, without need or provocation, and the force was used maliciously and sadistically, resulting in a violation of the Eighth Amendment.  Amended Complaint at 4.  This claim is raised pursuant to 42 U.S.C. § 1983.  To prevail in a § 1983 action, Plaintiff must demonstrate: "(1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998)).  "The Eighth Amendment of the United States Constitution forbids 'cruel and unusual punishments.' U.S. Const. amend. VIII.  The Eighth Amendment is applicable to the states

---

damages "would necessarily imply the invalidity of [plaintiff's] conviction or sentence[,]" the complaint must be dismissed, unless the conviction or sentence has previously been invalidated.  See Response at 9.  The Heck bar has been extended to prison disciplinary judgments that result in the deprivation of good-time credits.  See Edwards v. Balisok, 520 U.S. 641, 646-48 (1997).  Here, Plaintiff did not lose gain time credits as a result of his disciplinary proceeding, see Def. Ex. 3 at 14, Exhibit A, Disciplinary Report Hearing Information Log # 209-110698; therefore, a judgment in Plaintiff's favor would not necessarily imply the invalidity of a disciplinary charge with a loss of gain time.  Thus, this case does not come within the ambit of Heck and Edwards.

through the Fourteenth Amendment." <u>Bingham</u>, 654 F.3d at 1175 (citation omitted).

More specifically, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992). An action is considered "unnecessary and wanton" if it is totally without penological justification. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981). A two-pronged showing must be made by a prisoner claiming the excessive use of force by a prison official in violation of the Eighth Amendment: "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). For an excessive use of force claim, the relevant state of mind standard requires a showing that the defendant applied force "maliciously and sadistically for the very purpose of causing harm." <u>Id.</u> (citations and internal quotation marks omitted).

In determining whether force was applied maliciously and sadistically for the very purpose of causing harm, the Eleventh Circuit, discussing the Eighth Amendment's proscription of cruel and unusual punishments in a prison setting, recognizes the five relevant factors outlined by the Supreme Court:

> (1) the extent of the injury; (2) the need for
> application of force; (3) the relationship
> between that need and the amount of force
> used; (4) any efforts made to temper the
> severity of a forceful response; and (5) the
> extent of the threat to the safety of staff
> and inmates, as reasonably perceived by the
> responsible officials on the basis of facts
> known to them. Campbell,[8] 169 F.3d at 1375
> (citing Whitley,[9] 475 U.S. at 321, 106 S.Ct. at
> 1085); see also Hudson v. McMillian, 503 U.S.
> 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)
> (applying the same five factor test set forth
> in Whitley).

Sanks v. Williams, 402 F. App'x 409, 412 (11th Cir. 2010) (per

curiam).

"Injury and force, however, are only imperfectly correlated,

and it is the latter that ultimately counts." Wilkins v. Gaddy,

559 U.S. 34, 38 (2010) (per curiam). Gratuitous beatings, without

causing serious injury, still violate the Eighth Amendment's

proscription against cruel and unusual punishments. See id. at

1178-79 ("[a]n inmate who is gratuitously beaten by guards does not

lose his ability to pursue an excessive force claim merely because

he has the good fortune to escape without serious injury"); see

also Hall v. Bennett, 447 F. App'x 921, 923 (11th Cir. 2011) (per

curiam) (citation omitted) (recognizing the medical reports did not

note obvious injuries, being ever mindful that the focus of the

inquiry is on the nature of the force applied, and finding summary

---

[8] Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999).

[9] Whitley v. Albers, 475 U.S. 312 (1986).

- 12 -

judgment was precluded when faced with two competing, contradictory stories concerning an alleged assault); Logan v. Smith, 439 F. App'x 798, 802 (11th Cir. 2011) (per curiam) (finding the video and medical evidence did not flatly contradict the inmate's allegations; disallowing plenary summary judgment on the excessive force claim; and leaving the evaluation of evidence to a jury).

Defendants Stokley and Hall contend that Plaintiff fails to establish an Eighth Amendment violation because their use of force on November 6, 2011 was "necessary and proper to defend against Plaintiff's aggressive behavior[.]" Motion for Summary Judgment at 11. In his Declaration, Defendant Stokley states he was employed as a sergeant at RMC on November 6, 2011 when he used force to take Plaintiff to the ground in response to Plaintiff's attempt to grab him around the waist. Def. Ex. 3 at 1. Defendant Stokley describes the incident as follows:

> On November 6, 2011, during the second shift, I was assigned as A-dormitory and B-dormitory Housing Supervisor, but was also assigned as the supervisor of chow hall, as a secondary duty. As the chow hall supervisor, I am responsible for the safe and secure operation of the chow hall in accordance with FDOC rules, procedures, and institutional regulations, as well as supervising the officers and inmates present in the chow hall.
>
> If a correctional officer verbally reprimands an inmate by counseling with the inmate regarding FDOC rules, procedures, or institutional regulations, he must notify the housing officer of the counseling so that he can record the violation on the inmate's contact card. An inmate's contact card

documents all of the verbal reprimands given to an inmate so that the housing officer can have an ongoing record of the inmate's behavior to assist with the determination of whether more stringent sanctions need to be imposed, such as a disciplinary report ("DR").

At about 1:15 pm, I proceeded from the chow hall to E-dormitory Officer's Station to notify Officer Hall, the housing officer for E-dormitory, of my attempts to counsel with Bowden regarding his personal hygiene and need to shave in accordance with the FDOC'S shaving rule. I note that when I exited the chow hall, there was no way that Bowden could have observed me walking out of the chow hall in the manner that he describes in his complaint from where inmates stand to wait for entry into E-dormitory. There is no line of sight between the location in which inmates are supposed to stand to await authorization to enter E-dormitory and the chow hall doors because F-dormitory is directly in the way.

Still, after I went into the E-dormitory Officer's Station, Bowden, who was waiting outside the Officer's Station door, was called to the entrance of the Officer's Station. At that point, I further attempted to counsel with him concerning the need to comply with the FDOC's shaving rule. During our discussion, Bowden charged at me in a bent position and attempted to grab me around the waist area with both of his arms. As a result of his actions, Bowden ripped the left pocket area of my windbreaker jacket. When Bowden charged at me, I wrapped both of my arms around his upper chest while he was bent over, with my face and chest on his back. When Bowden was unable to tackle me to the ground, he attempted to strike me with closed fists. I then forced Bowden face down onto the ground so that I was lying on top of him with the bulk of my body weight on the back of his upper body. After I took Bowden to the ground, he still attempted to hit me as he was not yet in hand restraints.

- 14 -

After Bowden refused to comply with my order to cease his resistance, Officer Hall responded and applied Oleoresin Capsicum ("OC") chemical agents toward Bowden. At that point, I again ordered Bowden to cease his actions, and he calmed down without further resistance.

Bowden then complied with the procedures to place him in hand restraints. After Bowden was restrained, all force ceased. Additional officers then came to the scene for assistance and escorted him away from the area. At this point, per FDOC policy, I was no longer in contact with Bowden and therefore could not provide any further details as to what happened next for him.

Def. Ex. 3 at 2-3 (paragraph enumeration omitted).

Defendant Stokley adds:

When I had to force Bowden to the ground and during my subsequent attempts to restrain Bowden from his continued attempts to hit me, both of my rank insignia metal lapel pins from either side of my shirt collar were broken. These rank insignias are sharp metal lapel pins shaped as chevrons for the rank of sergeant. When the lapel pins were broken, the chevron part of the insignia fell off and the remaining part of the pin had sharp points that were exposed on the outside of the shirt collar. Inside of the Officer's Station there were other objects and furniture nearby that had sharp edges. Also, during the take down and my subsequent attempts to restrain Bowden, I hit my right hand and foot against the heater located against the Officer's Station wall.

Id. at 3 (paragraph enumeration omitted). According to Defendant Stokley, as a result of the use of force, Plaintiff sustained "a superficial scratch to the top of his head." Id.

- 15 -

Defendant Stokley denies there was a third officer that came into the office and performed a choke hold on Plaintiff. Id. at 2. Defendant Stokley also attests there was no officer employed at RMC that met Plaintiff's description of the third officer (a bald-headed white male corporal with a Samoan tattoo on his arm and no glasses or facial hair). Id. at 3.

Defendant Stokley wrote a disciplinary report against Plaintiff, charging him with attempted battery on a correctional officer. Id. After an investigation, a disciplinary hearing was held and Plaintiff was found guilty and sanctioned with sixty days of disciplinary confinement. Id.

Defendant Stokley also completed a "Report of Force Used" on November 6, 2011. Def. Ex. 6 at 11. As far as the type and amount of force used, Defendant Stokley wrote, "I wrapped both of my arms around Inmate BOWDEN's upper chest area and forced Inmate BOWDEN face down onto the floor." Id. Under the Warden's Summary in the Report of Force Used, the Warden said that the report of force used and supporting documentation suggest compliance with departmental rules. Id. Under the Institutional Inspector's Review in the Report of Force Used, it was noted that OC pepper spray (16 grams) was used during the incident. Id. Also, the charge of battery on a law enforcement officer, the allegation of claimed injuries, and the claim of excessive use of force were referred to management.

Id.   The Inspector General's Review is marked approved and dated November 28, 2011.  Id.

Defendant Hall, in his Declaration, states that he is a correctional officer at RMC.  Def. Ex. 4 at 1.  He attests to the following:

> On November 6, 2011, I was assigned as E-dormitory Housing Officer.  As the housing officer, I am responsible for the supervision of up to 144 adult inmates including the movements into and among the dormitory, as well as the security of the housing unit.
>
> At about 1:15 pm, I was in the E-dormitory Officer's Station with Sergeant Stokley while he was attempting to counsel with Bowden concerning his physical hygiene and need to shave in accordance with the FDOC shaving rule.  During their discussion, Bowden charged at Sergeant Stokley in a bent position and attempted to grab him around the waist area with both of his arms.
>
> When Bowden charged at Sergeant Stokley, I observed Sergeant Stokley wrap both of his arms around Bowden's upper chest while he was bent over, with Sergeant Stokley's face and chest on his back.  When Bowden was unable to tackle Sergeant Stokley to the ground, he attempted to strike Sergeant Stokley with closed fists.  Sergeant Stokley then forced Bowden face down onto the ground so that Sergeant Stokley was lying on top of him with the bulk of his body weight on the back of Bowden's upper body.
>
> Once Sergeant Stokley forced Bowden to the ground, Bowden attempted to strike Sergeant Stokley using both of his closed fists and elbows, while flailing his arms towards Sergeant Stokley who was positioned on Bowden's upper back.  When Sergeant Stokley ordered Bowden to stop attempting to hit him,

> Bowden refused to comply. During these
> events, Bowden was not yet in hand restraints.

Id. at 2 (paragraph enumeration omitted).

Regarding his own actions, Defendant Hall states:

> After Bowden refused to comply with
> Sergeant Stokley's order to cease his
> resistance, I responded by breaking seal
> number 0002398 on my MK-4 Sabre Red streamer
> canister number 11-107 and administered two
> (2), one (1) second bursts of Oleoresin
> Capsicum ("OC") striking Bowden in the face.
> At that point, the chemical agents had the
> desired effect and Sergeant Stokley again
> ordered Bowden to cease his actions, and he
> calmed down without further resistance.

Id. (paragraph enumeration omitted). Defendant Hall states
Plaintiff thereafter was in compliance with directives to submit to
hand restraints and no further force was used. Id. Additional
staff arrived and escorted Plaintiff from the area. Id.

With respect to his use of chemical agents, Defendant Hall
attests he was certified in its use at the time of the incident,
and he is currently certified in the use of chemical agents. Id.
at 3. After his use of the canister, the weight of the canister
went from 126 grams to 110 grams, with 16 grams being used during
the incident. Id. Defendant Hall states that during the incident,
he observed that Defendant Stokley's windbreaker jacket pocket was
torn and the lapel pins were broken. Id. Defendant Hall adds that
a third officer never came into the room during the incident, and
that no employee at RMC at the time of the incident matched
Plaintiff's description of the third officer. Id. at 2-3.

- 18 -

Also, five "MINS"[10] Incident Reports were completed by institutional officials. Jennifer R. Riley ("Ms. Riley") prepared four reports and Scottie L. Kilgore ("Mr. Kilgore") prepared one. Each is summarized below.

The first report prepared by Ms. Riley is a self defense incident report by Defendants Hall and Stokley, with Plaintiff being the subject. Def. Ex. 6 at 3. Under Medical Department Description of Injuries, the report stated that Plaintiff received a one-inch laceration to the top of his head. Id. The report noted that the incident began at approximately 1:15 p.m., and it described the entire incident. Id. at 3-4. According to the report, at 1:21 p.m., Plaintiff was escorted to the shower, where he received a cool water shower and was issued clean clothing. Id. Plaintiff was monitored for one hour for signs of respiratory distress, with no signs of distress noted. Id. at 4. Finally, it was noted that a post-use-of-force physical was performed by E. Doyle, LPN, and a disciplinary report for attempted battery was issued. Id.

The second "MINS" Incident Report was prepared by Ms. Riley, with the incident labeled as battery of law enforcement. Id. at 5. Plaintiff was listed as the subject, and the victims were listed as

_____

[10] The abbreviation or acronym "MINS" is not defined in the documents provided to the Court. Apparently, these reports are generated for the use of corrections officials and the Inspector General's Office after a use of force upon an inmate or a battery upon a correctional officer by an inmate.

- 19 -

Defendants Stokley and Hall. Id. It was noted that Plaintiff had a one-inch laceration to the top of his head, that he received a disciplinary report for attempted battery of a correctional officer, and that he was placed in administrative confinement. Id.

A third "MINS" Incident Report was completed by Ms. Riley concerning injuries to Defendant Stokley. Id. at 6. The complainant was recorded as Defendant Stokley. Id. The subject was listed as Plaintiff. Id. The witness was listed as Defendant Hall. Id. It was noted that Defendant Stokley was injured during a use of force with Plaintiff in the E-Dorm Officer's Station. Id. It was also noted that Plaintiff received a one-inch laceration to the top of his head. Id.

A fourth "MINS" Incident Report was prepared by Ms. Riley concerning injuries to Plaintiff. It stated Plaintiff was evaluated by E. Doyle, LPN, and Plaintiff was found to have a one-inch laceration to the top of his head. Id. at 7-8.

Finally, a "MINS" Incident Report was prepared by Mr. Kilgore concerning the claim of excessive force. Id. at 9-10. The subject was listed as Defendant Stokley, and the victim was recorded as Plaintiff. Id. It was noted that Plaintiff underwent a post use-of-force physical during which a one-inch laceration was found on the top of Plaintiff's head. Id. at 1. Plaintiff alleged that Defendant Stokley punched him in the cheek, and that once Plaintiff was on the ground, Defendant Stokley beat him in the face and head.

Id.   Plaintiff provided no witnesses to the incident.   Id. Plaintiff was referred to administrative confinement pending the disciplinary proceeding and further review of the allegations against staff.   Id. at 9-10.

The Emergency Room Record documented a post use-of-force examination at 1330 [hours], and showed that Plaintiff was involved in a use of force incident in which chemical agents were used.   Id. at 19.   Vital signs were taken, and Plaintiff was noted to be ambulatory, alert, oriented and verbally responsive to questions. Id.   With respect to complaints of pain, Plaintiff complained of chemical agents in his right eye.   Id.   Upon examination, a one-inch laceration was found on the top of Plaintiff's head.   Id. There was minimal bleeding, without width or depth to the laceration.   Id.   No other injuries were found.   Id.   The physician was not notified, but treatment was provided by a nurse.   Id. Steri strips were applied to the laceration, and a dressing was placed on the area of the laceration.   Id.   It was noted that the bleeding stopped.   Id.   Plaintiff had no complaints.   Id. Plaintiff was advised to report any injuries due to the incident to sick call.   Id.   The "Diagram of Injury" recorded the location of the one-inch laceration and described the one-inch laceration.   Id. at 20.

An "Incident Report" was completed by Defendant Stokley regarding the November 6, 2011 incident.   Id. at 21.   According to

the report, several steps were undertaken after the use of force: a control room log entry was made, Plaintiff was placed in confinement; the duty warden was notified;  "EAC"[11] was notified; a disciplinary report was initiated; and "MINS" reports were initiated.  Id.  A summary of the incident was provided.  Id. Under the comment portion of the report, Lieutenant Albert Hester, the Shift Supervisor, stated:

> Officer N. Moore arrived and activated the hand-held video camera at approximately 1:18 PM, to record post use-of-force activities to Inmate BOWDEN.  Inmate BOWDEN was escorted to K-dorm and at approximately 1:21 PM was placed in the I-wing shower where he received a cool water shower.  Inmate BOWDEN was issued clean clothing and removed from the shower.  Inmate BOWDEN was continuously monitored for (1) one hour for signs of respiratory distress with none noted.  Inmate BOWDEN received a post us[e] of force physical in K-dorm by E. Doyle, LPN with a (1) one inch laceration to the top of the head.  Inmate BOWDEN was issued a Disciplinary Report for 1-19 Battery (attempted) on a correctional officer and housed in K3102.  Duty Warden, Warden B. Riedl notified. EAC Duty Officer Jackson notified at approximately 2:10 PM and issued use-of-force tracking #2011-11-14571.   MINS completed #0000411888 (Use of force)[.]

Id.  Under the review section, Major James Barton concluded: "It appears that all Use of Force procedures were followed during this incident.  It also appears that the minimum amount of force was

---

[11] The apparent abbreviation or acronym "EAC" is not defined in the documents provided to the Court.

used.   Forward to Warden Riedl and the Inspector's Office for review."  Id.

Defendant Hall completed an Incident Report, id. at 23, and the hand-held camera operator wrote an Incident Report.  Id. at 24. Plaintiff refused to provide a "Witness Statement" and to sign the form.  Id. at 25.

Steven L. Harris ("Dr. Harris"), an emergency medicine physician with thirty years of experience and currently serving as Director of Medical Services for the FDOC, provided a Declaration upon reviewing the relevant medical records of Plaintiff.  Def. Ex. 7.  Dr. Harris first describes the allegations and then provides the results of the post use-of-force examination:

> Bowden complains that during the November 6, 2011 use of force, he was punched in the face, had a choke hold applied, was punched and kicked in the head and torso, hit in the head with a radio, had his face sprayed with chemical agents, and was kicked in the face. He alleges that he had lacerations to the head and inner mouth, and numerous bruises to his arms, torso, and head.

> The records show that the use of force occurred at 1320 hours on November 6, 2011, and Bowden had a post-use-of-force medical evaluation at 1330 hours.  The evaluation revealed that he had a slightly elevated blood pressure and heart rate, which is typical after exertion.  Bowden only complained of being chemically sprayed to the right eye and complained of no other injuries.  The record shows that he incurred only a narrow, one-inch superficial laceration to the scalp, which was Steri-stripped with a gauze dressing applied.

Id. at 2 (paragraph enumeration and internal citations omitted).
According to Dr. Harris's report, for the year following the use-
of-force, Plaintiff made no further medical complaints associated
with the November 6, 2011 incident.  Id.  In January 2012, he
complained of headaches, stating he has a history of migraine
headaches.  Id.

Dr. Harris states that if the incident occurred as Plaintiff
alleged, "there would have been visible indications of trauma."
Id.  Instead, no visible signs of trauma were found, just a
superficial one-inch laceration to his scalp.  Id.

Plaintiff submitted a grievance to the Warden, dated November
21, 2011, complaining about the November 6, 2011 incident.  Def.
Ex. 11 at 2.  In the grievance, Plaintiff describes in detail the
incident.  Plaintiff was ordered to go into the Officer's Station,
where Defendant Stokley began using derogatory and racial
expletives.  Id.  Then Defendant Stokley asked Plaintiff to smile,
and Defendant Stokley proceeded to hit Plaintiff with a closed fist
to the left side of Plaintiff's face.  Id.  Plaintiff then "fell
into [Defendant Stokley] to restrict [Defendant Stokley] from
further assaulting [me,]" and Defendant Hall punched Plaintiff in
the side of the head.  Id.  Another officer entered the room and
began choking him.  Id.  Plaintiff resisted, fearing suffocation.
Id.  Defendant Stokley ordered Plaintiff to the floor, and when the
officer let him go, Plaintiff laid on the ground.  Id.  At that

point, all three officers beat and kicked Plaintiff.  Id.  One of the officers placed handcuffs on Plaintiff while he was in a prone position posing no threat to anyone.  Id.  Defendant Hall struck Plaintiff on the top of his head with a walkie-talkie and sprayed Plaintiff with mace.  Id.  Defendant Stokley kicked Plaintiff in the right side of the face.  Id.

The grievance was considered approved to the extent that the matter was referred to the Institutional Inspector for review.  Id. at 1.  It was noted that the matter had previously been referred to the Inspector General's Office.  Id.

Plaintiff's deposition was taken on January 24, 2013.  Def. Ex. 2.  Plaintiff describes a series of blows from Defendants Stokley and Hall like those he alleges in his sworn Amended Complaint.  He explains his reaction to Defendant Stokley striking him:

> [w]hen my head went back, my - it was like I said, my head went back, it was just reaction for me to just grab him to keep him from hitting me.  I can't take another one of them punches 'cause I might have been knocked out if he hit me again.  You feel me?  So when I grabbed him, I - I- I grabbed him, wrapped my arms around him to keep him from hitting, defending myself.

Id. at 12.  Plaintiff says the whole incident from the time he was punched in the face until chemical agents were applied lasted six to seven minutes.  Id. at 20.

Plaintiff states he received a cold shower after the chemical agents were applied, and he was given eye drops.  Id. at 20-21. His vitals were taken, and his head wound was cleaned.  Id. at 21. Plaintiff states he received the one-inch cut and no other injuries.  Id.  Plaintiff notes that he was provided medical treatment, and the cut was glued shut.  Id. at 22.  He states that after the use of the chemical agents, his eyes were burning.  Id.

Plaintiff also testifies that he sought medical treatment by writing sick call in January 2012.  Id. at 35.  He states the sick call nurse told him nothing could be done for his headaches, but she provided him with Tylenol.  Id. at 36.  Plaintiff explains that he did not start getting headaches until after the November 10, 2011 chemical spraying incident, and he says that he still gets them.  Id. at 36-37.

In addition to submitting a sworn Amended Complaint, Plaintiff relies on a sworn Declaration in Opposition to Defendants' Motion for Summary Judgment.  Pltf. Ex. 1.  In pertinent part, Plaintiff attests:

> Once inside the officer's station Stokley yelled and cursed at me, never talking about shaving.  Hall stood next to Stokley laughing in amusement.  I thought Stokley looked funny because he was all puffed up and red in the face, so I was smirking at him trying not to laugh.
>
> This went on for about 2 minutes before Stokley who was standing in front of me stated "Show me them teeth,["] and threw a right hook punch into my face.  Given our close

p[r]oximity I fell into him from the force behind the blow and out of sheer reaction grabbed the area between his hands and wrists to halt a further attack.

Stokley snatched his hands free and started throwing punches with both hands, as Hall continued to observe and laugh. I'd started to sheild [sic] myself when Stokley ordered Hall to "help me fuck him up," to which Hall complied [and] punched me in the side of my face.

Before I could run, Stokley grabbed my [sic] by my shirt, holding me while he and Hall rained punches on me. I begged them to stop and tried to hunch over to try to sheild [sic] myself. Another officer came into the officer's station and put me in a choke hold while the two defendants continued to beat me. At this point I started resisting by twisting my body back and forth because I was being choked.

One of the defendants threw a wild punch and hit the officer choking me causing him to rel[e]ase his hold on me, at which time I dropped to the ground. I attempted to sheild [sic] the vital parts of my body as Stokley and Hall continued to punch and kick me.

At some point my arms were pulled behind me and I was handcuffed. I started calling the defendants' names in protest of them beating me. Hall walked over to wear [sic] I lay on my stomach and hit me in the head with his radio and pulled his pepper spray off his hip sparying [sic] me in the face with a long burst. I continued to call them names such as fags, girls, and cowards, before Stokley kicked me in the right side of my face.

There was a nice sized puddle of blood that came from the laceration on the top of my head I recieved [sic] when Hall hit me with his radio, to which I have a permanent scar.

For the purpose of <u>visibility</u> the only wound I sustained was the one on top of my head. However I sustained a laceration on the inside of my mouth when Stokley kicked me in the face and numerous bruises on my body.

Once the use of force camera arrived I was taken to confinement, given a shower, clean clothes, and a post use of force exam.

During the exam I was only treated for the visible injuries, and a full body exam was not conducted.

I received a disciplinary report from Stokley, for attempted battery on a correctional officer and was found guilty of the disciplinary report based on Stokley's written report.

The allegations made by the defendants' are absolutely untrue. At no time was I aggressive or violent towards Stokley or Hall. Defendant Stokley initiated the altercation by punching me in the face. I have never attempted to attack, but mer[e]ly balled up in an effort to lessen the damage the defendants tried to inflict on me. Stokley punched me and continued beating me along with Hall despite my pleas to them to stop.

I feared for my well being and reported what happened in a witness statement. I had only been in prison 10 days at the time and didn't really know anyone[']s name to call as a witness on my behalf.

<u>Id.</u> at 2-3 (paragraph enumeration omitted) (emphasis in original).

In Plaintiff's case, the Court recognizes that apparently there were no witnesses to the alleged use of force in the officer's station. Immediately after the incident, Plaintiff was examined by a nurse. Evidence of some trauma was noted by medical staff, as Plaintiff received "a lac[eration] to [the] top of [his]

- 28 -

head" and he suffered pain in his right eye from being chemically sprayed. Def. Ex. 6 at 19. The medical assessment undertaken shortly after the alleged incident supports Plaintiff's allegations that he suffered some injury during the incident. As noted in Wilkins, 559 U.S. at 40 (citation and internal quotation marks omitted), the modest nature of the injury may well limit the damages a plaintiff may recover, but it does not negate the allegation that the force "was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline."

Plaintiff's Declaration is based on his personal observations and is not blatantly contradicted by other evidence in the record. Plaintiff has described more than a push or shove, and he has presented evidence of some injury during what he alleges was a gratuitous beating by Defendants. See Hudson, 503 U.S. at 9. To the extent Plaintiff's allegations concerning the severity of the beating and the claim of multiple injuries may be perceived as somewhat exaggerated and unsupported by the medical records, at this stage of the proceedings, the Court is unwilling to wholly discredit his version of events. See Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012) (per curiam) (finding nothing inherently wrong with crediting self-serving statements when determining whether there is a genuine dispute of fact on a material issue when considering a motion for summary judgment).

There are two competing, contradictory stories of what happened, and this Court cannot weigh the credibility of the witnesses. Instead, such matters must be left to the fact finder - the jury.

There is a genuine dispute of facts on a material issue in this case.  Accordingly, Defendant Stokley and Defendant Hall's Motion for Summary on the Eighth Amendment claim is due to be denied.

### D.  Qualified Immunity

Defendants Stokley and Hall assert they are entitled to qualified immunity from monetary damages in their individual capacities.  Motion for Summary Judgment at 21.  The Eleventh Circuit has said:

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).  This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Under Saucier, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act.  533 U.S. at 201, 121 S.Ct. at 2156.  If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his

> favor, determines that the plaintiff has
> satisfied these two requirements, the
> defendant may not obtain qualified immunity.
> <u>Holloman</u>, 370 F.3d at 1264.

<u>Bryant v. Jones</u>, 575 F.3d 1281, 1295 (11th Cir. 2009), <u>cert.</u> <u>denied</u>, 559 U.S. 940 (2010).  Following the United States Supreme Court's decision in <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009), this Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated."  <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam).

It is undisputed that Defendants Stokley and Hall were engaged in discretionary functions during the events in question.  The question remains as to whether these Defendants violated Plaintiff's constitutional rights and are therefore entitled to qualified immunity in their individual capacities.  "In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment . . . ."  <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002).  Given the undersigned's recommendation that summary judgment be denied as to the Eighth Amendment claim against Defendants Stokley and Hall, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be denied as to Defendants Stokley and Hall.

### E.  Compensatory and Punitive Damages

Defendants contend that Plaintiff did not sustain any physical injury, and he is not entitled to compensatory or punitive damages. Motion for Summary Judgment at 21-23.  The medical records reflect that Plaintiff did suffer some physical injury during the November 6, 2011 incident (a one-inch laceration to the scalp).  Plaintiff describes more extensive injuries to his body and alleges that a full body examination was not conducted after the use of force. Pltf. Ex. 1 at 3.  Thus, Defendants Stokley and Hall's request that Plaintiff not be allowed to seek compensatory or punitive damages and that he be limited to seeking nominal damages is due to be denied.  Although Plaintiff should not be limited to nominal damages on summary judgment based on the theory that Plaintiff suffered no injury, "[t]he nature of the injuries suffered by Plaintiff will, however, remain relevant to whether [the Defendants] actually used force as described by Plaintiff and whether they acted 'maliciously and sadistically[.]'" Swisher v. Giles, No. 2:10-CV-670-MEF, 2013 WL 870451, at *6 (M.D. Ala. Feb. 13, 2013) (citation omitted), report and recommendation adopted by No. 2:10-CV-670-MEF, 2013 WL 870669 (M.D. Ala. Mar. 7, 2013) (unpublished).

### F.  Violations of State Law

In his Amended Complaint, Plaintiff claims that Defendants Stokley and Hall's unprovoked and needless use of physical force against him constituted the torts of assault and battery under

Florida Law.   Amended Complaint at 4.   Defendants ask that this Court decline to exercise supplemental jurisdiction of Plaintiff's state law tort claims, asserting that Plaintiff cannot establish any constitutional violation.   Motion for Summary Judgment at 24. Given that Defendants' Motion for Summary Judgment on the Eighth Amendment claim and on qualified immunity is due to be denied, it follows that Defendants' request that the state law claims be dismissed from this action is also due to be denied.

### VI.   Conclusion

The following recommendations are made by the undersigned.

**RECOMMENDED:**

1.   Defendants' Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART** as follows.

2.   Defendants' Motion for Summary Judgment be **GRANTED** to the extent that all claims against Defendant Norris be **DISMISSED WITH PREJUDICE.**

3.   Defendants' Motion for Summary Judgment as to Defendants Stokley and Hall be **DENIED.**

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida, this 2nd day of July, 2013.

JAMES R. KLINDT
United States Magistrate Judge

- 33 -

sa 7/1
c:
The Honorable Marcia Morales Howard
Christopher Bowden
Counsel of Record